**Donald M. ISRAEL; Mark R. Taylor, Plaintiffs–Appellants,**

v.

**Daniel E. CARPENTER; Benefit Concepts New York, Inc.; Voluntary Benefit Systems, Inc., Defendants–Appellees.**

No. 1634, Docket 96–9480.

United States Court of Appeals, Second Circuit.

Argued June 4, 1997.

Decided Aug. 11, 1997.

Jay D. Fischer, Fischer Weisinger Caliguire Porter & Pierce, New York City (Philip Pierce, of counsel), for Plaintiffs–Appellants.

Jack E. Robinson, Carpenter & Robinson, LLP, Stamford, CT, for Defendants–Appellees.

Before: MESKILL, JACOBS, and LEVAL, Circuit Judges.

JACOBS, Circuit Judge:

This appeal raises a question under Massachusetts law as to the scope and effect, for res judicata purposes, of a stipulation to dismiss "with prejudice" one of two lawsuits pending between the same parties based on essentially identical claims. Appellants Donald M. Israel and Mark R. Taylor (collectively "Israel") have asserted the same breach of contract claims against appellee Daniel E. Carpenter in three separate lawsuits, in two jurisdictions.[1] The stipulation at issue dismissed the first of these actions, a Massachusetts state-court suit; but the parties took no contemporaneous step to terminate the second suit between them (contesting the same issues), which was pending simultaneously in the United States District Court for the Southern District of New York. The suit underlying this appeal is a subsequently asserted *third* action (removed to the Southern District) between the same interests, on the same claims. The district court (Francis, *Magistrate Judge*) initially ruled that the present suit was not barred by res judicata notwithstanding the dismissal "with prejudice" of the Massachusetts action, and denied

---

1. All three actions also involved claims by and against Israel's and Carpenter's various affiliated corporate entities.

Carpenter's motion for summary judgment; but the court later granted Carpenter's motion pursuant to Fed.R.Civ.P. 60(b) to vacate that ruling, and dismissed Israel's breach of contract claims. On appeal, Israel argues that the court's October 3, 1996 Memorandum and Order, granting the Rule 60(b) motion and dismissing his claims, was an abuse of discretion.

We conclude that the district court erred by considering the parties' stipulation of dismissal under general federal-law principles, and gave insufficient consideration to the principles of contract construction—under Massachusetts law—that properly govern interpretation of the stipulation agreement. Accordingly, we vacate the judgment dismissing Israel's claims, and remand for further proceedings.

## BACKGROUND

Israel, Taylor, and Carpenter were once partners in an insurance brokerage and employee benefit consulting business. This controversy arises from what the district court characterizes as their "less than amicable" "business divorce." *See Israel v. Carpenter,* No. 93–CV–1961, 1995 WL 133773, Memorandum and Order, at *1 (S.D.N.Y. Mar. 28, 1995). The underlying dispute concerns the distribution of their business assets, including the allocation of trademark rights; in particular, Israel alleges that Carpenter breached the terms of the parties' Buyout Agreement, which contained various stock-purchase and licensing provisions. *Id.*

*The Prior Actions.* In February 1993, Israel sued Carpenter and three corporate defendants for breach of contract in Massachusetts state court (the "Massachusetts Action"). The next month, Carpenter caused a corporation wholly owned by him, Benefit Concepts New York, Inc. ("BCNY"), to bring suit against Israel (and two other corporate defendants) in the Southern District of New York (the "First Southern District Action"), asserting, *inter alia,* federal trademark claims under sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a). Israel then filed a third-party complaint against Carpenter in the First Southern District Action, alleging essentially the same state-law breach of contract claims that he had asserted in Massachusetts.

The Massachusetts Action was concluded by a voluntary Stipulation of Dismissal, dated August 10, 1993, that "dismissed *with prejudice*" Israel's claims against Carpenter and "dismissed *without prejudice*" his claims against the three corporate defendants. The First Southern District Action continued to pend for some 20 more months; that action was concluded when the district court (i) granted Israel's motion for summary judgment dismissing BCNY's federal trademark claims *with prejudice,* and (ii) declined to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c), over Israel's pendent state-law claims, thereby dismissing those claims *without prejudice. See Israel,* 1995 WL 133773, at *6.

*The Present Action.* The lawsuit underlying this appeal (the "Present Action") was filed on March 29, 1995, the day after the First Southern District Action was dismissed. In this third action, Israel sued Carpenter, BCNY, and another corporate defendant (collectively, "Carpenter") in New York State Supreme Court, New York County, once more alleging essentially the same breach of contract claims that he had asserted against Carpenter twice before. Carpenter removed this case to federal district court, invoking diversity jurisdiction; he thereafter moved to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), arguing that Israel's claims were barred by res judicata and collateral estoppel by virtue of the with-prejudice dismissal of those claims in the Massachusetts Action. *See Israel v. Carpenter,* 95–CV–2703, 1996 WL 257643, Memorandum and Order, at *1 (S.D.N.Y. May 15, 1996). Israel cross-moved to remand the case to state court, asserting lack of diversity jurisdiction. *See Israel v. Carpenter,* 95–CV–2703, 1995 WL 640534, Memorandum and Order, at *1 (S.D.N.Y. Oct. 31, 1995). Both parties sought sanctions.

After further motion practice and several interim rulings, the district court denied Israel's motion to remand (finding that complete diversity existed), *Israel v. Carpenter,* 95–CV–2703, 1996 WL 11252, Memorandum

and Order, at *2 (S.D.N.Y. Jan. 11, 1996), and denied Carpenter's motion seeking summary judgment on the ground of res judicata, *Israel v. Carpenter*, 95–CV–2703, 1996 WL 257643, Memorandum and Order, at *6 (S.D.N.Y. May 15, 1996) ("Summary Judgment Order").

In deciding the summary judgment issue, the district court considered the preclusive effect of the Massachusetts stipulation of dismissal under principles of Massachusetts law,[2] citing *Duncan Galvanizing Corp. v. Valspar Corp.*, No. 93–12368–Z, 1995 WL 96954, at *1 (D.Mass. Feb. 21, 1995) ("*Duncan I*"), for the proposition that "Massachusetts applies the principles of contract law to the interpretation of a stipulated dismissal." Summary Judgment Order at *4. The court concluded that under Massachusetts contract law, the stipulation was unclear as to whether the parties intended to terminate Israel's action against Carpenter with prejudice only as to the reassertion of such claims in Massachusetts, or whether they intended to preclude further litigation of those claims anywhere. *Id.* at *5. The district court denied summary judgment on the ground that the ambiguous stipulation and the factual submissions of the parties allowed competing inferences to be drawn about the parties' intent in dismissing the Massachusetts Action "with prejudice." *Id.* at *6.

Carpenter filed a notice of appeal from the denial of summary judgment, but withdrew the appeal (without prejudice to any right to seek reinstatement) in order to move in the district court for relief from the Summary Judgment Order under Fed.R.Civ.P. 60(b). *See Israel v. Carpenter*, No. 95–CV–2703, 1996 WL 563343, Memorandum and Order, at *1 (S.D.N.Y. Oct. 3, 1996) (the "Rule 60(b) Order"). In support of his Rule 60(b) motion, Carpenter relied on *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir.1986), which was not previously brought to the district court's attention, and on a subsequent decision in the *Duncan Galvanizing* case that the court had cited as authority for applying Massachusetts contract law to the interpretation of the par-

ties' stipulation; Carpenter contended that the new opinion, *Duncan Galvanizing Corp. v. Valspar Corp.*, No. 93–CV–12368–GAO, 1996 WL 464048 (D.Mass. July 12, 1996) ("*Duncan II*"), "overturned" the opinion on which the district court had relied. Rule 60(b) Order at *1.

With these authorities in hand, the district court determined that its prior order denying summary judgment was erroneous. The court rejected Carpenter's assertion that *Duncan II* undermined the rule in *Duncan I* that Massachusetts employs contract principles to construe a stipulation of dismissal; but the court nonetheless found it "instructive" that *Duncan II* applied res judicata where the stipulation directed a "with prejudice" dismissal, "without making any provision for [the] alleged collateral oral agreement" that was at issue in that case. Rule 60(b) Order at *2 (quoting *Duncan II*, 1996 WL 464048, at *4). Turning to this Court's opinion in *Nemaizer*, the district court found a similar clear-statement rule in our holding that a plaintiff who "intended to preserve [the] right" to assert an ERISA claim based on the same facts that had supported his voluntarily dismissed state-court claim, "should not have entered into this type of 'with prejudice' stipulation." *Id.* (quoting *Nemaizer*, 793 F.2d at 62).

Discerning in *Duncan II* and *Nemaizer* "a decided reluctance to find ambiguity in the language of a stipulation of dismissal," the district court felt

constrained to hold that [Israel is] barred from raising in this action the claims that were dismissed by stipulation in Massachusetts. There, [he] agreed to a dismissal "with prejudice" as to Mr. Carpenter. Yet [Israel's] counsel failed to specify that the claims nevertheless could be revived in a different forum, as was purportedly [Israel's] intent. As in both *Duncan II* and *Nemaizer*, [Israel] must bear the consequences of this omission.

---

2. The court was of course required to apply state law in this analysis. *See, e.g., Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (federal courts must give state-court judgments the same preclusive effect as would be given the judgments under the law of the state in which they were rendered).

*Id.* The district court therefore granted relief under Rule 60(b) and entered summary judgment dismissing Israel's complaint. *Id.* at *3.

## DISCUSSION

■ We review the district court's decision to grant relief under Rule 60(b) for abuse of discretion. *See DeWeerth v. Baldinger,* 38 F.3d 1266, 1272 (2d Cir.1994). An error of law may constitute such an abuse. *See Molloy v. Metropolitan Transp. Auth.,* 94 F.3d 808, 811 (2d Cir.1996). We conclude that the district court erred here in granting Carpenter Rule 60(b) relief from its earlier order denying summary judgment.

■ Ordinarily, a stipulation of dismissal "with prejudice" as to a pending action is unambiguous; like any such dismissal, it is "deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit." *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72, 78 (2d Cir.1997). *See also Samuels v. Northern Telecom, Inc.,* 942 F.2d 834, 836 (2d Cir.1991) ("A stipulation dismissing an action with prejudice ... has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action.") (internal quotations and citations omitted). Such a stipulation will (almost invariably) have preclusive effect notwithstanding a litigant's post hoc assertion that he intended to preserve certain claims. For example, in holding that a stipulation of dismissal "with prejudice" had res judicata effect in *Nemaizer v. Baker,* 793 F.2d 58, 62–63 (2d Cir.1986), we stated:

> Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds ... to justify [relief under] Rule 60(b)(1).... [A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from judgment.... To rule otherwise would empty the finality of judgments rule of meaning.

(Internal citations omitted.) Our cases reflect a consistent reluctance to limit the effect of such a stipulation by looking behind its plain language. *See, e.g., Samuels,* 942 F.2d at 837 ("Res judicata may not be avoided on the basis of ... an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice.").

Nevertheless, we conclude that the broad principle in *Nemaizer* does not control this case; under a line of cases applying Massachusetts law, the stipulation here requires consideration in light of all of the surrounding circumstances—consideration that the district court failed to give.

### A. *Nemaizer*

The facts of *Nemaizer* resemble the facts here, but the issues on appeal were different. The plaintiff in *Nemaizer* filed a suit in state court to collect contributions to an employee benefit trust fund; after the case was removed to federal court, the plaintiff stipulated to a dismissal of his complaint with prejudice because the underlying state-law cause of action became untenable. *See Nemaizer,* 793 F.2d at 60. Six months later, the plaintiff filed a similar complaint in the district court, this time pleading a federal claim under ERISA. *Id.* The defendant moved to dismiss the second complaint on the ground of res judicata, but the district court found that there had been a misunderstanding as to whether the stipulated dismissal was intended to permit the plaintiff to refile his claims under federal law, denied the motion to dismiss, and granted the plaintiff relief under Rule 60(b) to modify the stipulation. *Id.*

On appeal, the plaintiff argued that his counsel failed to appreciate the breadth of the stipulation, had never intended to foreclose a later federal claim under ERISA, and that what had occurred was "an honest mistake[,] ... a misunderstanding of what each party intended." *Id.* at 62. In reversing, we ruled that the stipulation of dismissal "clearly precluded [the plaintiff] from bringing the instant ERISA claim. Had [the plaintiff] intended to preserve that right, he should not have entered into this type of 'with prejudice' stipulation." *Id.* In particular, the *Nemaizer* court rejected the notion that the res judicata effect of the dismissal could be avoided on

the ground that plaintiffs' counsel had made a *mistake* concerning the scope of the stipulation:

> Relief from counsel's error is normally sought pursuant to [Fed.R.Civ.P.] 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect. But we have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload.

*Id.* (internal quotations and citations omitted). Although it seemed likely that "the consequences of entering into [the stipulated dismissal] were not fully weighed" by counsel, we concluded that, "even if responsibility rests with plaintiff's prior counsel, Rule 60(b)(1) does not provide an avenue for relief." *Id.*

■ The present case is distinguishable in (at least) this crucial respect: Israel makes no claim that the stipulation of dismissal as written was a product of counsel's "mistake" or any unilateral failure to appreciate its reach and effect. Rather, Israel argues that in the circumstances of this case, it was understood and intended by everyone involved that the stipulation would terminate *only* litigation of the Massachusetts Action, and that the parties' parallel lawsuit, the First Southern District Action, would thereafter continue as the single arena for contesting all of their claims. Israel argues that

> execution of the Massachusetts stipulation of dismissal was but one aspect of the overall agreement to have the parties litigate all issues in [the Southern District of] New York.... [T]he only rational conclusion as to why the stipulation of dismissal was entered at all was to allow the [breach of contract] issue to be litigated in one

rather than two forums in which the claim existed at the time the stipulation was signed.

Appellant's Brief at 14, 19. Thus Israel is seeking to limit the stipulation of dismissal to its allegedly mutually intended scope, not to escape it by pleading a unilateral mistake.

Israel points to three facts (essentially uncontested) to demonstrate that the stipulated dismissal of the Massachusetts Action, as intended, had a limited scope and effect: (a) two lawsuits involving the same parties and identical breach of contract claims were pending simultaneously in two jurisdictions; (b) those parties entered into a "with prejudice" stipulation of dismissal in only one of those two lawsuits; and (c) for some 20 months thereafter, the parties continued to litigate—without interposition of a res judicata defense by Carpenter—the other of the two lawsuits.[3] These circumstances, at the very least, raise an issue of fact as to whether the stipulation was intended to have a limited effect. Whether or not that issue is material depends upon the governing law; for reasons stated below, we conclude that it is a material question at least under Massachusetts law.

### B. *State Law*

■ In gauging the preclusive effect of the stipulation of dismissal, the district court (citing *Duncan I*) correctly decided that the question is controlled by principles of Massachusetts contract law. *See* Summary Judgment Order at *4 ("Massachusetts applies the principles of contract law to the interpretation of a stipulated dismissal.") (citing *Duncan I*, 1995 WL 96954, at *1).

■ Massachusetts law evidently allows and requires inquiry into the intended scope and effect of such a stipulation; in Massachusetts, "[t]he circumstances surrounding the making of [an] agreement must be examined to determine the objective intent of the parties." *Edmonds v. United States,* 642 F.2d

---

**3.** Carpenter argues that the First Southern District Action was *not* in fact actively litigated during most of the 20-month period following dismissal of the Massachusetts Action, and that he therefore was not required to assert his res judicata defense during that period. Appellee's Brief at 10 (arguing that "nothing was happening in the case as it was transferred" among Southern District judges). But the record shows that litigation *did* continue in the First Southern District Action after entry of the Massachusetts stipulation, including responsive pleadings (relating to a fourth-party complaint), further discovery, and a motion for summary judgment by Israel that the district court decided without Carpenter raising the issue of res judicata.

877, 881 (1st Cir.1981) (citing *Louis Stoico, Inc. v. Colonial Dev. Corp.*, 369 Mass. 898, 902, 343 N.E.2d 872 (1976)). Unremarkably, "[i]n the first instance, it is for the court . . . to determine if a written document is or is not ambiguous." *Boston Edison Co. v. Federal Energy Regulatory Comm'n*, 856 F.2d 361, 365 (1st Cir.1988). But "[i]n the search for plain meaning," the court should consider the clause at issue in light of "all the other phraseology contained in the instrument," and should also direct its interpretation "to the meaning of the terms of the writing or writings *in the light of the circumstances of the transaction.*" *Id.* (internal quotations and citations omitted) (emphasis added).

We think that "in the light of the circumstances of th[is] transaction"—the litigation of two nearly identical lawsuits simultaneously in two jurisdictions, the stipulated dismissal of one of them with prejudice, and the continued litigation of the other—a question arises as to the meaning of the stipulation of dismissal. We further conclude that, in construing the scope and effect of *this* Massachusetts stipulation under Massachusetts law, the district court needed to consider these unusual factual circumstances, cited by one party as evidence of both parties' clear intention. As the First Circuit explains:

> We recognize under Massachusetts law that, in order to utilize extrinsic evidence of the parties' intent, a court need not invariably find facial ambiguity. The Massachusetts courts have said:
>
>> When the written agreement, as applied to the subject matter, is in any respects uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms.

*ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1264 (1st Cir.1991) (citations and emphasis omitted). We emphasize that this is *not* a case in which extrinsic or parol evidence is being proffered "for the purpose of . . . *contradicting or changing [the] terms* " of the stipulation, *id.* (emphasis in original), because— wholly apart from any extrinsic or parol evidence—"all the circumstances of the parties leading to [the stipulation's] execution," *id.*, render its words ambiguous, or at least puzzling.

The district court reached that same conclusion in its Summary Judgment Order, but altered its view (upon Carpenter's motion for Rule 60(b) relief) after considering *Nemaizer* and *Duncan II*. On the whole, we believe that *Duncan II* supports our view that Massachusetts law permits consideration of transactional circumstances to shed light on contract language that might be held unambiguous as a purely textual matter.

*Duncan* involved a contract dispute over paint used to coat roadway bridges; the painting company sued the paint supplier for damages caused by "paint adhesion failures" on several projects (*i.e.*, peeling). *Duncan II*, 1996 WL 464048, at *1. The parties settled, and signed a stipulation dismissing the action with prejudice as to all claims "which were raised or which could have been raised herein." *Id.* Thereafter, the painting company experienced adhesion problems on the "Casey Overpass" project, and brought a second action against the paint supplier. *Id.* In *Duncan I*, the court declined to dismiss the claim under res judicata because "factual questions [remained] about the extent and reach of the settlement agreement," including "whether the Casey Overpass was included or could have been included in the [first] lawsuit, and whether the parties orally agreed to exclude the Casey Overpass from the settlement of that suit." *Duncan I*, 1995 WL 96954, at *1. After discovery, the paint supplier again moved for summary judgment on the ground of res judicata.

In *Duncan II*, the court granted summary judgment in favor of the paint supplier. The court found that the painting company's pleadings in its first lawsuit "clearly show[ed] that the Casey Overpass was one of the several projects which had experienced paint adhesion failures"; that the painting company "considered the claims relating to the . . . Casey Overpass to be part of the same series of transactions on which the claims in the [first] action were based"; and that the painting company "knew of the paint adhesion problems at Casey Overpass . . . well prior to the settlement of the first action." *Duncan II*, 1996 WL 464048, at *2–*3. The court rejected the painting company's claim that "the parties orally agreed to exclude the Casey Overpass from the scope of the . . . stipulation of dismissal," because "[t]he stipu-

lation of dismissal contains no such reservation"; the court therefore held that, "[b]y voluntarily dismissing the prior claims with prejudice without making any provision for an alleged collateral oral agreement to exclude claims relating to the Casey Overpass from the scope of the dismissal, [the painting company] has relinquished its right to raise those claims in this action." *Id.* at *3–*4.

We undertake this extended survey of *Duncan II* to make the following point: *Duncan II* does not support the view (adopted by the district court) that Massachusetts courts, as a matter of legal principle, are "reluctan[t] to find ambiguity in the language of a stipulation of dismissal." Rule 60(b) Order at *2. The court in *Duncan II* ultimately found no ambiguity in the stipulation of dismissal at issue there, given the circumstances of that particular case; but the court conducted precisely the analysis that one would expect under Massachusetts contract law: it interpreted the parties' stipulation of dismissal "as applied to the subject matter" of the agreement, and "in the light of the circumstances of the transaction." *Boston Edison,* 856 F.2d at 365 (internal quotations and citations omitted). In so doing, the court in *Duncan II* considered the language of the stipulation—precluding all claims "which were raised or which could have been raised"—as well as the circumstances indicating that the parties appreciated its scope (for example, the plaintiff's prior awareness of its potential claim relating to the "Casey Overpass"). *Duncan II* does *not* undermine the general rule governing contract interpretation under Massachusetts law, that "[t]he circumstances surrounding the making of the agreement must be examined to determine the objective intent of the parties." *Edmonds,* 642 F.2d at 881 (citation omitted).

We agree with the district court's initial conclusion, denying summary judgment, that in this case the stipulation of dismissal "is ambiguous" and is susceptible of "two reasonable interpretations." Summary Judgment Order at *5. We therefore conclude that the district court erred in granting Rule 60(b) relief and summary judgment to Carpenter, and dismissing Israel's complaint on the ground of res judicata.

## CONCLUSION

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.[4]

---

4. Carpenter made a motion to this Court for sanctions against Israel and his attorneys. We conclude that sanctions are unwarranted on this record, and therefore deny the motion.