Duane Reade Inc. v. St. Paul Fire and Marine Insurance Company

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

Argued: November 5, 2008                    Decided: March 31, 2010

Docket No.[s]: 07-4141-cv(L), 07-4296-cv (XAP)

DUANE READE, INC.,

*Plaintiff-Counterclaim-Defendant-Appellant-Cross-Appellee*,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

*Defendant-Counterclaim-Plaintiff-Appellee-Cross-Appellant*.

Before: CABRANES and HALL, *Circuit Judges*, and GLEESON, *District Judge*.[1]

In this insurance dispute arising from the September 11, 2001 destruction of a drug store in the World Trade Center, Duane Reade, Inc. appeals from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*) dismissing its complaint against its property insurer St. Paul Fire and Marine Insurance Company, on the basis of *res judicata*. The district court's application of *res judicata* was proper because Duane Reade could have raised its claims in this litigation in its prior action, but did not. Further, the district court's reduction of the appraisal award was not an error of law. In response to St. Paul's cross-appeal,

---

[1] The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

we modify the judgment to exclude interest accrued prior to the appraisal award. Affirmed as modified.

GUY MILLER STRUVE (Charles S. Duggan, Joshua A. Plaut, A. Brendan Stewart, *on the brief*), Davis Polk & Wardwell, New York, New York, *for Plaintiff-Counterclaim-Defendant-Appellant-Cross-Appellee Duane Reade, Inc.*

CHARLES FRIED (Lon A. Berk, Stephanie Pestorich Manson, Hunton & Williams LLP, McLean, Virginia, *on the brief*), *for Defendant-Counterclaim-Plaintiff-Appellee-Cross-Appellant St. Paul Fire and Marine Insurance Company*.

HALL, Circuit Judge:

In this insurance dispute arising from the September 11, 2001 destruction of a drug store in the World Trade Center ("WTC"), Duane Reade, Inc. ("Duane Reade") appeals from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*) dismissing its complaint against its property insurer St. Paul Fire and Marine Insurance Company ("St. Paul"), on the basis of *res judicata*. The district court's application of *res judicata* was proper because Duane Reade could have raised in its prior action the claims it raises here, but it did not. Further, the district court's reduction of the appraisal award was not an error of law. In response to St. Paul's cross-appeal, we modify the judgment to exclude interest accrued prior to the appraisal award. Affirmed as modified.

## BACKGROUND

This remarkably protracted insurance coverage dispute, which includes no fewer than four opinions from the district court and one prior opinion from this Court, arose from the total destruction of Duane Reade's retail pharmacy in the September 11, 2001 terrorist attack on the

2

WTC.  Alleging that its property insurer, St. Paul, had failed to fulfill its obligations under Policy No. 144SP0725 (the "Policy"), Duane Reade commenced an action in the United States District Court for the Southern District of New York.  02 Civ. 7676 (JSR).  In its third amended complaint, Duane Reade asserted four causes of action against St. Paul: two claims seeking damages for breach of contract (counts one and three) and two claims for declaratory relief (counts two and four).  Counts one and two related specifically to the destruction of the WTC store, while counts three and four addressed injuries suffered at other, non-WTC Duane Reade stores that were closed for periods of time following the September 11, 2001 attacks.

In count two, Duane Reade sought "Declaratory Relief" for its "WTC Loss" resulting from the "respective rights and duties" of Duane Reade and St. Paul "as they relate to Duane Reade's entitlement to coverage pursuant to the Policy."  Joint Appendix (hereinafter "J.A.") at 155 (Third Amended Complaint ¶ 40).  Specifically, Duane Reade sought relief "pursuant to the Policy's business interruption coverage." [2]  *Id.*

Duane Reade asserted that it had the right to recover losses for the entire period actually required to rebuild the World Trade Center complex.  St. Paul, in contrast, contended that Duane

---

[2] As we have previously stated, this provision of the Policy

> indemnifies Duane Reade for lost earnings and expenses if Duane Reade's business is partially or totally interrupted as a result of a covered property damage. . . .  The relevant valuation provision, entitled "PERIOD OF RESTORATION AND/OR INDEMNITY," provides that recovery of [business interruption] losses "shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such property that has been destroyed or damaged" (the "Restoration Period").

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 387 (2d Cir. 2005) (hereinafter "*Duane Reade III*").

3

Reade's recoverable losses were limited to those suffered within twenty-one months following the September 11, 2001 destruction of the store—the amount of time it calculated as reasonably necessary for Duane Reade to relocate its store and resume operations.

St. Paul answered and counterclaimed against Duane Reade. Duane Reade filed a reply to St. Paul's counterclaims, but did not advance any counterclaims against St. Paul with regard to the insurance contract or the clauses at issue. St. Paul moved to dismiss Duane Reade's complaint and to compel appraisal.[3] The district court dismissed without prejudice Duane Reade's breach of contract claims as not ripe.[4] Duane Reade's claims for declaratory relief survived. The district court also denied St. Paul's motion to compel appraisal as premature due to issues of law still to be determined.[5]

Duane Reade, which had already received $9,863,853 from St. Paul for its Business Interruption loss, filed a proof of loss and then reasserted its breach of contract claims. The district court again dismissed these claims without prejudice as unripe, finding that "the

---

[3] The Policy provides that if the parties cannot agree on the amount of loss, either party can demand appraisal by two appraisers and an umpire. J.A. at 54 (Policy ¶ 37).

[4] "[I]t is undisputed that plaintiff has not yet filed a proof of loss. Accordingly, payment by defendant is not yet due, and plaintiff's claims for contractual damages are premature." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003) (hereinafter "*Duane Reade I*").

[5] According to the district court:

> [A] dispute between parties that goes to coverage under the policy and can only be resolved by analysis and application of the policy is not appropriate for appraisal. Given the dismissal of the breach of contract claims and the reduction of the case to claims for declaratory judgment regarding the scope of coverage and related issues, this becomes such a case where appraisal is premature.

*Duane Reade I*, 261 F. Supp. 2d at 296 (internal quotation marks and citations omitted).

valuation aspects of the breach of contract claims had to be submitted to an appraiser before Duane Reade could recover damages." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 236 n.1 (S.D.N.Y. 2003) (hereinafter "*Duane Reade II*")

Following discovery, both parties moved for summary judgment. The district court denied St. Paul's motion for summary judgment in its entirety and, for reasons not pertinent to this opinion, granted Duane Reade's motion to the extent that it dismissed all three of St. Paul's counterclaims. *Id.* at 242. The district court issued a declaratory judgment construing the Policy's Business Interruption coverage, finding that "[o]nce Duane Reade could resume functionally equivalent operations in the location where its WTC store once stood, the Restoration Period would be at an end." *Id.* at 239.

Following a bench trial on other related issues, the district court entered final judgment.[6] The district court also granted St. Paul's motion to refer to appraisal the calculation of the duration of the Restoration Period. *Id*. at 242. Under the agreement between Duane Reade and St. Paul, the appraisers were to limit their appraisal to the value of Duane Reade's Business Interruption loss at the WTC store as well as the value of Duane Reade's claims under the Extended Recovery period for the WTC store and other stores. J.A. at 346-47 (Agreement on Protocols for Appraisal ¶ 2).

Duane Reade timely appealed the district court's final judgment, arguing that the district court had misconstrued the scope of the Policy's Business Interruption coverage. While the

---

[6] The district court ordered: "All matters in this case having now been resolved . . . the Clerk is hereby directed to enter judgment awarding declaratory judgment to plaintiff and dismissing the breach of contract claims without prejudice." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 02-7676-cv (S.D.N.Y. Sept. 25, 2003) (order entering judgment); J.A. at 1061.

appeal was pending before this Court, the appraisers received submissions, conducted a four-day hearing, *id.* at 420 (Baliban Affidavit in Support of Motion for Summary Judgment (hereinafter "Baliban Aff.") ¶ 7), and determined that the total value of Duane Reade's Business Interruption loss was more than $40 million above the amount previously paid by St. Paul, *id.* (Baliban Aff. ¶ 8). The appraisers were in the process of drafting their written award when this Court issued its decision resolving Duane Reade's appeal. *Id.* at 422 (Baliban Aff. ¶ 13). Although we affirmed the judgment of the district court, we modified its declaration so that it "eliminate[d] any reference to 'the location where [the] WTC store once stood'" and changed "'functionally equivalent operations' to 'operations.'" *Duane Reade III*, 411 F.3d at 386 (alteration in original). We ruled that

> the St. Paul policy does not provide [business interruption] coverage until Duane Reade can resume operations in a store located at its former WTC site. Instead, coverage extends only for the hypothetical time it would reasonably take Duane Reade to "repair, rebuild, or replace" its WTC store at a suitable location.

*Id.* at 398. We also noted that Duane Reade's lost profits for its WTC store would properly fall under the Leasehold Interest clause of the Policy rather than the Business Interruption clause:

> To be sure, there are few if any locations in New York City comparable to the WTC, and Duane Reade will most likely not be able to recreate the profit stream it once enjoyed there. But any discrepancies between the new building and WTC in terms of benefits and advantages are exclusively accounted for under the Leasehold Interest clause.

*Id.* We did not remand the case to the district court or otherwise provide for further proceedings.

Following our opinion in *Duane Reade III*, the appraisal panel issued its award relating to Duane Reade's covered losses under the Business Interruption provision of the Policy. According to the appraisers, the Restoration period ended twenty-four months after September 11, 2001. The appraisal panel valued Duane Reade's loss for the WTC store at roughly $14

6

million[7]—far less than the amount the appraisal panel had been prepared to award prior to this Court's opinion. In applying *Duane Reade III*, the appraisers noted that:

> [A]ny difference in the cost of leasing the replacement property and . . . any differences caused by the move of the store to a reasonably equivalent location and the concurrent loss of benefits of the WTC, such as increased foot traffic, entrenched customer base, or superior location is properly covered by the Leasehold Improvement clause and not the Business Interruption clause.

J.A. at 97 (Letter from Appraisers at 4).

Fifteen months after this Court's 2005 ruling, Duane Reade moved pursuant to Rules 15(a) and 60(b)(6) of the Federal Rules of Civil Procedure to amend its complaint to add two additional causes of action. Specifically, Duane Reade sought to assert new claims for recovery under the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions of the Policy. *Id.* at 920 (Letter from James W.B. Benkard to the District Court (Sept. 27, 2006) at 1) (hereinafter "Benkard Letter"). Finding Duane Reade's motion untimely, the district court denied the motion. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 466 F. Supp. 2d 560, 562-63 (S.D.N.Y. 2006) (hereinafter "*Duane Reade IV*").

Duane Reade then filed a complaint in January 2007 in the Southern District of New York (the complaint and claim before us in the instant appeal) to confirm the appraisers' award

---

[7] The panel found that Duane Reade's Business Interruption loss for the WTC store for the restoration period was $9,728,052 and that the Extended Recovery Period loss for that store during an additional twelve-month period was $4,300,561. J.A. at 94-95 (Letter from Appraisal Umpire Vincent J. Love and Appraisers Jeffrey L. Baliban and Bruno Graizzaro to James W.B. Benkard and Lon A. Berk (June 5, 2005) (hereinafter "Letter from Appraisers") at 1-2). As noted above, St. Paul had previously paid Duane Reade $9,863,853 for the WTC store Business Interruption losses. J.A. at 417 (Letter from Kenneth Chapman to John K. Henry (June 19, 2006) at 1).

and to assert contract and declaratory judgment claims based on the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions of the Policy.

The district court confirmed the appraisers' award relating to the Business Interruption loss, but denied the portion of the award resulting from Duane Reade's Extended Recovery Period loss at its WTC store. The district court also dismissed Duane Reade's claims based on the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions of the Policy as barred by the doctrine of *res judicata*. Duane Reade appealed. St. Paul cross-appealed, arguing that Duane Reade's lawsuit is barred by a twelve-month suit limitation clause and that the district court erred in confirming the appraisal panel's inclusion of interest accrued prior to the appraisal panel's award.

## DISCUSSION

### Standard of Review and Background

Central to this cross-appeal is whether the district court erred in finding that Duane Reade's claims related to the loss at its WTC store based on the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions in the Policy are barred by the doctrine of *res judicata*. We review *de novo* the district court's grant of summary judgment, *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009), as well as its "application of the principles of *res judicata*," *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009). The law governing the doctrine of *res judicata* in a diversity action is "the law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

"Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)); *see also Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir. 1992) (explaining that the doctrine of *res judicata* "'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised'" (quoting *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir. 1985))).  If a valid and final judgment has been entered on the merits of a case, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  Restatement (Second) of Judgments § 24(1) (1982).

**Declaratory Judgment Exception**

The application of the doctrine of *res judicata* is limited, however, by the declaratory judgment exception.  This exception, which is recognized under both New York and federal law, limits the preclusive effect of the declaratory judgment to the "subject matter of the declaratory relief sought," *Harborside*, 959 F.2d at 372, and permits the plaintiff or defendant to "continue to pursue further declaratory or coercive relief."  *Id.*  In other words, the preclusive effect of a declaratory judgment action applies only to the "matters declared" and to "any issues actually litigated . . .  and determined in the action."  Restatement (Second) of Judgments § 33; *see also* 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4446, at 313 (2d ed. 2002) (noting that the effects on claim preclusion resulting from a

declaratory judgment are "shrouded in miserable obscurity"). As this Court has previously stated, the declaratory judgment exception to the application of the doctrine of *res judicata* applies when "the prior action involved *only* a request for declaratory relief." *Harborside*, 959 F.2d at 372 (emphasis added). *See also* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4446, at 313-14 ("So long as the request for declaratory relief is combined or followed with coercive relief, the claim-preclusion rules that apply to actions for coercive relief apply with full force.").

Duane Reade argues that its claims come within the declaratory judgment exception because the prior action was limited to a request for declaratory relief. We disagree. In its initial action, Duane Reade brought two claims for declaratory relief and two claims for breach of contract (which were later dismissed without prejudice). St. Paul, in response, counterclaimed with its own breach of contract claims, which the district court dismissed with prejudice. At that point, the dispute was no longer only a request for declaratory relief. The district court found that

> [t]he presence of these claims seeking something other than declaratory relief, which the Court addressed on the merits, disqualifies this case for the declaratory judgment exception. Indeed, once [St. Paul] brought its claims for breach of contract, [Duane Reade] was required under Fed. R. Civ. P. 13 to bring any claims it had against St. Paul "aris[ing] out of the transaction or occurrence that is the subject matter" of St. Paul's claims.

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 503 F. Supp. 2d 699, 704 (S.D.N.Y. 2007) (hereinafter "*Duane Reade V*"). We agree with the district court's conclusion that there were claims other than those for declaratory relief and that those claims had the effect of disqualifying this case from the declaratory judgment exception.

When St. Paul raised its counterclaims, Duane Reade was *compelled* by Rule 13 to file its own claims arising out of the same transaction or occurrence or else be precluded from pursuing those claims in a subsequent lawsuit.[8] *See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) ("If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit."). The declaratory judgment exception does not provide a safe haven from Rule 13. *Cf. Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988) (holding that had defendant filed a responsive pleading, counterclaims would have become ripe and would have had to be raised, thus precluding such claims from being raised in a subsequent action). In sum, the prior action did not involve *only* a request for declaratory relief and, as such, the declaratory judgment exception is unavailable. *See Harborside*, 959 F.2d at 372.

In another case in which we considered the contours of the declaratory judgment exception as it applies to the doctrine of *res judicata*, we noted in dicta that if a plaintiff had sought both declaratory and equitable relief in its initial action, and the "court denied [plaintiff's] request for equitable relief as a matter of discretion—and thereby [did] not rule[] on its merits—the decision of the . . . court might not have preclusive effect on a subsequent action." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (per curiam). This case is instructive by counter-example, and its dicta is not inconsistent with our present holding. The

---

[8] Rule 13 provides: "A pleading *must* state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13 (emphasis added).

11

court in *Giannone* considered claims for equitable relief (made in tandem with a declaratory action) that were dismissed without prejudice. Here, St. Paul's counterclaims, triggered in all likelihood by Duane Reade's contract claims, not only were dismissed by the district court *with* prejudice, but gave rise to an obligation on the part of Duane Reade to advance its counter-counterclaims. It is those counterclaims, decided on the merits, and the effect they had *sub silentio* on issues that should also have been advanced by Duane Reade for determination on the merits, that distinguish the facts of this case from the discussion in *Giannone* and are dispositive of whether the declaratory judgment exception is unavailable.[9]

### *Res Judicata*

Having concluded that the declaratory judgment exception does not apply to Duane Reade's prior action, we now turn to whether its claims based on provisions of the Policy that were not raised in its initial action are barred by the doctrine of *res judicata*. We hold that they are. In its initial action, Duane Reade could have sought recovery based on the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions in the Policy. It did not. Because these claims "could have been raised and decided in the previous suit," Duane Reade is barred from relitigating them now. *Id.*

That Duane Reade is precluded from asserting claims based on provisions in the Policy that it did not raise in its initial action is consistent with our statement in *Harborside*, that "the preclusive effect of [a] declaratory judgment is limited to *the subject matter* of the declaratory

---

[9] Because we find that the district court's resolution of St. Paul's counterclaims on the merits bars the application of the declaratory judgment exception to the doctrine of *res judicata*, we need not resolve the question posed in *Giannone*, to wit, whether the declaratory judgment exception would limit the preclusive effect of a declaratory action accompanied by a request for equitable relief that is dismissed without prejudice. *Giannone*, 548 F.3d at 194.

12

relief sought." *Harborside*, 959 F.2d at 372 (emphasis added). The subject matter of the initial action was the scope of the Policy and not, as Duane Reade contends, the narrower issue of the application of the Business Interruption provision. In reaching this conclusion we credit the observations of Judge Rakoff, who has presided over this case throughout its various iterations and has written four opinions resolving disputes between the parties. According to Judge Rakoff, "[a]s all parties understood at the time, the prior action addressed the overall issue of scope of coverage under the Policy." *Duane Reade V*, 503 F. Supp. 2d at 705. Judge Rakoff's assessment of Duane Reade's position in the initial action is consistent with the record before us.

In its third amended complaint, Duane Reade labeled its claim for relief as "Declaratory Relief: WTC Loss," and stated that "[t]here presently exists an actual and continuing controversy between Duane Reade, on the one hand, and St. Paul, on the other hand, regarding their respective rights and duties as they relate to Duane Reade's entitlement to *coverage pursuant to the Policy*." (emphasis added). In response to a ruling from the district court that appraisal was premature because the district court had not yet determined the scope of coverage under the Policy, Duane Reade submitted a letter to the district court stating that "appraisal would eventually be the appropriate vehicle for an assessment of Duane Reade's contractual damages after *all the coverage issues had been decided*." (emphasis added). J.A. at 1030 (Letter from James W.B. Benkard to the District Court (June 20, 2003) at 2). In that same letter, Duane Reade asserted that:

> [Duane Reade's] declaratory judgment claims are sufficiently broad to encompass the coverage issues plaintiff seeks to have decided in this litigation. . . . [T]he [District] Court's prior ruling recognizes both the utility of disposing of all coverage issues before appraisal occurs and that all issues relating to the 'scope of coverage' under the Policy are properly handled within the framework of a declaratory judgment action[.]

13

*Id.* Finally, in a brief submitted to this Court in its initial appeal, Duane Reade articulated the position that under New York law, "disputes concerning the scope of an insurer's liability . . . must be resolved by a court before appraisal occurs." J.A. at 1071 (Brief of Plaintiff-Counter-Defendant-Appellee Duane Reade, Inc. at 14, *Duane Reade III*). Yet despite acknowledging the necessity of discerning the overall scope of coverage under the Policy, Duane Reade neither addressed nor sought through the appraisal process compensation under the provisions of the Policy it now seeks to invoke. Particularly when Duane Reade acknowledged that the scope of coverage must be determined in advance of seeking appraisal, the court and the opposing party were entitled to understand that Duane Reade identified all the bases for coverage on which it relied. We look askance at its argument to the contrary.

It goes without saying that Duane Reade's communications about resolving "all" of the coverage issues related to the Policy prior to conducting an appraisal contradict its current position that its initial action was to determine only the extent of coverage under the Business Interruption provision. Based on Duane Reade's communications to the district and appellate courts, we see no error in the district court's conclusion that the initial action was brought to determine whether St. Paul had "satisfied in full its obligation under the Policy." *Duane Reade V*, 503 F. Supp. 2d at 700.

Viewed another way, Duane Reade is dissatisfied with the amount awarded based on the Policy's Business Interruption provision that it invoked in the initial action and now seeks recovery based on other provisions in the Policy. It is clear that such claims are precluded. *See Harborside*, 959 F.2d at 372; *see also Haag v. United States*, 589 F.3d 43, 46 (1st Cir. 2009)

14

(noting that the strategy of litigating an issue "piecemeal" is barred by the doctrine of *res judicata*).

As the district court astutely noted:

> [I]t is not the issue that has changed from the prior action to this case—both actions address Duane Reade's entitlements under the Policy for losses arising from the terrorist attacks of September 11, 2001—but rather Duane Reade's strategy in approaching that issue. Neither the doctrine of *res judicata* nor the doctrine of collateral estoppel allows plaintiff to bring countless actions, one at a time, until plaintiff happens upon a legal theory that achieves the desired result.

*Duane Reade V*, 503 F. Supp.2d at 705.

Where a litigant "selected a litigation strategy he now regrets, placing all his eggs in [a single] basket[,] . . . his choice of that strategy will not prevent the application of [preclusion against him]." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1553 (11th Cir. 1995). Such is the case here. Although we recognize that Duane Reade will be unable to recover under the Policy what it might have been able to recover had it invoked other provisions of the Policy in its initial action, we are faced with the unavoidable fact that Duane Reade's current claims are based on the Leasehold Interest, Attraction Properties, and Contingent Business Interruption provisions and are therefore precluded.

We have previously remarked that "[t]o permit *res judicata* to be applied in [an action for declaratory relief] beyond *the precise issue before the court* would subvert the very interests in judicial economy that the doctrine was designed to serve." *Harborside*, 959 F.2d at 373 (emphasis added). Seizing on this language, Duane Reade argues that the doctrine of *res judicata* cannot preclude its second action for relief because "the precise issue before the court" in its current action is the application of provisions of the Policy that were not considered in the initial action. We agree with Duane Reade's contention that the application of provisions of the

15

Policy at issue in this litigation is not the "precise issue" that was considered in the original action.[10] Nevertheless, we agree with the district court that the specific language from *Harborside* relied upon by Duane Reade is inapplicable here.[11] The passage in *Harborside* to which Duane Reade refers is part of a discussion of how the declaratory judgment exception and the doctrine of *res judicata* work in tandem to further interests of judicial economy.[12] An overly formalistic application of this language from *Harborside* would itself result in an outcome

---

[10] As previously stated, the initial action considered the Business Interruption provision of the Policy while Duane Reade now seeks recovery under the Leasehold Interest, Attraction Properties, and Contingent Business Interruption Policy provisions.

[11] That the "precise issue" at stake in the two suits differs is consistent with our position that "the precise coverage provided by the Leasehold Interest clause is decidedly different than the one Duane Reade seeks under the policy's [Business Interruption] clause." *Duane Reade III*, 411 F.3d at 397.

[12] In *Harborside*, we stated:

> Policy considerations underlying both *res judicata* and the availability of declaratory relief also support our application of the declaratory judgment exception. A common purpose behind both declaratory judgment availability and the doctrine of *res judicata* is litigation reduction and the conservation of judicial resources. Declaratory relief enables federal courts to clarify the legal relationships of parties before they have been disturbed thereby tending towards avoidance of full-blown litigation. Similarly, *res judicata* operates to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' A requirement that parties to an action for declaratory relief bring all possible claims and counterclaims at that juncture or else be barred by *res judicata*, would undermine efficient adjudication and optimal use of judicial resources. Actions for declaratory relief would rapidly develop into full-scale legal contests, and the option of a preliminary suit limited to a declaration of the rights of the parties would evaporate. To permit *res judicata* to be applied in such a case beyond the precise issue before the court would subvert the very interests in judicial economy that the doctrine was designed to serve.

*Harborside,* 959 F.2d at 373 (internal citations omitted).

16

contrary to the purposes promoted by the doctrine of *res judicata*: judicial efficiency and prevention of piecemeal litigation. As noted above, however, the *Harborside* opinion does provide us with dispositive guidance in this case—that is, a declaratory action has preclusive effect on the "*subject matter* of the declaratory relief sought." *Harborside*, 959 F.2d 368 at 372 (emphasis added).

**Dismissal of the contract claims without prejudice**

Duane Reade contends that it cannot be precluded from reasserting the breach of contract claims that it brought in its initial action because those claims were dismissed *without* prejudice as unripe and, therefore, can be reasserted. We do not agree. The breach of contract claim related to the WTC store that Duane Reade hopes to reassert seeks recovery based on the same legal issue that was previously decided when the declaratory judgment action was resolved, namely, the scope of coverage under the Policy. This issue has already been determined, and Duane Reade may not reassert it now.

**The Leasehold Interest provision**

In its current appeal, Duane Reade argues that the district court erred as a matter of law because the Second Circuit "has already held in its prior decision that Duane Reade is entitled to recover under the Leasehold Interest clause of the Policy" and the district court had a "duty" to give effect to "this Court's holding." Duane Reade further contends that the appraisers must be reconvened to calculate the losses that Duane Reade is entitled to under the Leasehold Interest provision and other provisions of the Policy. We do not agree. Our earlier discussion of the Leasehold Interest clause was part of our explanation as to why Duane Reade could not recover lost profits under the Business Interruption clause. *See Duane Reade III*, 411 F.3d at 398. We

17

never issued a "holding" with respect to the application of the Leasehold Interest provision. Nor did we remand the case or otherwise provide for further proceedings in the district court. Under these circumstances, the district court had no obligation to order another appraisal, this time evaluating claims that Duane Reade concedes "had not been previously raised by the parties." J.A. at 921 (Benkard Letter at 2).

**The appraisers' Extended Recovery Period award**

In addition to its Business Interruption loss, the appraisal panel found that Duane Reade was entitled to $4,300,561 for loss under the Extended Recovery Period of the Policy. *Duane Reade V*, 503 F. Supp. 2d 699 at 702. The district court denied this portion of the award because it found that Duane Reade has not "actually replaced" the WTC store and, therefore, "does not qualify for Extended Recovery Period losses at this time." *Id.*

Duane Reade appeals, arguing that the district court misconstrued this provision of the Policy. The provision reads:

Extended Recovery Period

This policy is extended to cover the Actual Loss Sustained by the Assured resulting from interruption of business for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Assured's business to the condition that would have existed had no loss occurred, commencing with the latter of the following dates:

a) the date on which liability of the Company of loss resulting from interruption of business would terminate if the clause had not been attached to this policy or

b) the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually replaced; but in no event for more than twelve months from said later commencement date.

Policy, p. 21.

18

Whether the language of an insurance policy is ambiguous is a question of law, which we review *de novo*. *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). Under New York law, which governs this dispute, we resolve ambiguities in favor of the insured. *See, e.g.*, *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009); *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) (noting that under the doctrine of *contra proferentem*, ambiguities in an insurance policy must be construed in favor of the insured). But if an insurance policy is "clear and unambiguous," it is to be given its "plain and ordinary meaning," and courts are to refrain from rewriting the agreement. *Dalton*, 557 F.3d at 90; *U.S. Fidelity & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986); *see also Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) ("The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract." (internal quotation marks omitted)).

We will find language in an insurance contract ambiguous if "reasonable minds could differ as to its meaning." *Haber*, 137 F.3d at 695. In other words, ambiguity is present where the contractual language at issue is "reasonably susceptible to more than one reading." *Id.* A plain reading of the Extended Recovery Period provision reveals no such ambiguity. We read the provision to provide coverage under the Extended Recovery Period for "Actual Loss sustained" beginning with the commencement of the *later* of two events: (a) the end of the Policy's restoration period; or (b) the date on which the store is "actually replaced." Because the store has not yet been "actually replaced," nor has the Recovery Period terminated following the actual replacement of the store, the Extended Recovery Period provision is inapplicable.

19

On appeal Duane Reade argues that this interpretation cannot be correct because it essentially reads subparagraph (a) out of the Extended Recovery Period provision. We disagree. As the district court noted, a hypothetical scenario is possible where appraisers calculate a Recovery Period of a certain duration but the store is reconstructed faster than anticipated and is built before the Recovery Period ends. In such a situation, the date defined in subparagraph (a) would occur after the date in subparagraph (b). *See Duane Reade V*, 503 F. Supp. 2d at 702 n.2. This straightforward interpretation gives effect to both subparagraphs and effectively counters Duane Reade's argument. This outcome is also consistent with our prior determination that "[t]he purpose of the Extended Recovery Period is to provide additional coverage for the likely event that Duane Reade will continue to suffer losses due to its business interruption after it reopens the WTC store." *Duane Reade III*, 411 F.3d at 393. We affirm the district court's adjustment of the appraisal award so that it does not include the $4,300,561 in Extended Recovery Period loss.

**The appraisal panel's award of interest**

The appraisal panel determined that Duane Reade was entitled to $2,395,045 in interest on its Business Interruption loss, as calculated through May 2006. This interest award was later confirmed by the district court.[13] On appeal, St. Paul asserts that the district court erred as a matter of law in confirming the appraisal panel's interest award because under New York law, the appraisal panel could only compute interest from the date that St. Paul breached the

---

[13] "The Court confirms the portion of the appraisal award relating to the business interruption loss[.]" *Duane Reade V*, 503 F. Supp. 2d at 702.

20

insurance contract, which it contends did not occur until sixty days after the appraisal panel issued its June 2006 award.

The New York State cases that we have reviewed appear to support St. Paul's contention that an appraisal panel may not award interest prior to the insurer's breach of the insurance policy. According to applicable New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y.C.P.L.R. § 5001(a). In *Caiati of Westchester, Inc. v. Glens Falls Ins. Co.*, 696 N.Y.S.2d 474 (N.Y. App. Div. 1999), New York's appellate division stated that "the Supreme Court erred in awarding the plaintiff prejudgment interest on the appraisal award. Interest upon the loss payable under an insurance policy is not recoverable before the payment of the principal is due pursuant to the policy." *Id.* at 475.

Along those same lines, another New York state court found that "interest should be computed from the date defendant may be deemed to have breached its contract of insurance. Upon the facts in this case, we find that date to be . . . the date on which the appraisal award was made." *Buttignol Constr. Co. v. Allstate Ins. Co.*, 253 N.Y.S.2d 172, 173 (N.Y. App. Div. 1964); *see also Farmland Market Corp. v. N. River Ins. Co.*, 481 N.Y.S.2d 80, 81 (N.Y. App. Div. 1984), *aff'd*, 479 N.E.2d 823 (N.Y. 1985) ("Interest upon a loss payable under a fire insurance policy is not recoverable before the payment of principal is due pursuant to the policy. Accordingly, interest herein should be calculated as of 60 days after the submission of the proofs of loss by plaintiff." (internal citation omitted)); *In re U.S. Fid. & Guar. Co.*, No. 118690-03, 2006 WL 1094557, *3 (N.Y. Sup. Ct. Mar. 14, 2006) ("Respondent is not entitled to interest on the appraisal award. [Insurer] was obligated to pay respondent after ascertainment of the loss

21

was made by agreement or by an appraisal award."). We find no New York cases that hold to the contrary.

Duane Reade argues that "arbitrators and appraisers may in their discretion provide for pre-award interest," Duane Reade Response and Reply Brief 40 (internal quotation marks omitted), but that assertion is unsupported by legal authority. Duane Reade cites a number of New York cases that support the proposition that an *arbitrator* has the discretion to award pre-judgment interest. Duane Reade does not, however, cite to any New York cases that give an *appraisal panel* that same discretion.

Duane Reade also contends that the interest award was proper because the parties gave the appraisal panel the power to award prejudgment interest. The "Agreement on Protocols for Appraisal" permitted the parties to submit proposals to the appraisers "on the amount of loss . . . including any assumptions, quantities, forecasts, or estimates regarding mitigation, present value and any other factors affecting the loss calculations." As Duane Reade notes, the inclusion of the term 'present value' suggests that interest was contemplated by the parties and that they intended prejudgment interest to be included in the appraisers' calculations. This is a persuasive argument as to what the parties intended, but it does not necessarily follow that the appraisal panel's award was proper merely because the parties so intended. As we have previously stated, "the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal which is limited to factual disputes over the amount of loss for which an insurer is liable." *Duane Reade III*, 411 F.3d at 389. Whether New York law permits awards of interest prior to the date an insurance policy is deemed to have been breached is for the courts to decide, not the appraisal panel. Based on our review of applicable New York law, we

22

conclude that an insurer is not liable for pre-award interest prior to its breach of an insurance policy.

In sum, St. Paul could not have breached its obligations to pay Duane Reade until *after* the appraisal panel had determined the amount owed. Here, the parties agreed that "[a]ll adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss . . . ." In other words, St. Paul was obligated to make payment within sixty days of an appraisal award. Under this standard, St. Paul did not breach its obligation to Duane Reade until sixty days after the June 5, 2006 appraisal award. Pre-award interest was not available under New York law and, therefore, should not have been awarded by the appraisal panel. Accordingly, we modify the district court's judgment so as to deduct all interest that accrued prior to 60 days following the appraisal panel's award.

## CONCLUSION

Duane Reade could have raised claims related to other provisions of the Policy in its prior action. It did not and, as a result, the doctrine of *res judicata* bars Duane Reade from asserting them now. We affirm the district court's reduction of the appraisers' award for the Extended Recovery Period and modify the district court's award to exclude pre-award interest. The judgment of the district court is affirmed as modified.[14]

---

[14] Because we affirm the district court's judgment on other grounds, we decline to address St. Paul's argument that Duane Reade's action is barred by the Policy's suit limitation clause.

23