**Denisha DAVIS, Individually and on behalf of others similarly situated Plaintiffs,**

**v.**

**STATE OF CONNECTICUT DEPARTMENT OF CORRECTION, and State of Connecticut Department of Administrative Services, Defendants.**

**Civil No. 3:15–CV–57(AWT)**

United States District Court, D. Connecticut.

Signed March 11, 2016

312

Adam T. Klein, Tammy Marzigliano, Chauniqua D. Young, Nantiya Ruan, Outten & Golden, Cyrus E. Dugger, The Dugger Law Firm, PLLC, New York, NY, James Bhandary-Alexander, New Haven Legal Assistance Assoc. Inc., Joseph D. Garrison, Garrison Levin-Epstein Richardson Fitzgerald & Pirrotti PC, New Haven, CT, for Plaintiffs.

Ann E. Lynch, Matthew Larock, Office of the Attorney General, Hartford, CT, for Defendants.

## RULING ON MOTION TO DISMISS

Alvin W. Thompson, United States District Judge

The plaintiff, Denisha Davis ("Davis"), brings disparate impact and disparate treatment claims under 42 U.S.C. §§ 2000(e) et seq. ("Title VII"). The defendants, the State of Connecticut Department of Correction ("DOC") and State of Connecticut Department of Administrative Services ("DAS"), have moved to dismiss the complaint. For the reasons stated below, the defendants' motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS

Davis applied to DOC for the position of Correctional Officer ("CO") in 2006. At that time, the first step of the CO selection process was a written test. If the applicant passed the written exam, she progressed to a four-part physical fitness test ("PFT"). If the applicant failed any of the four parts of the PFT, she failed the entire test.

In 2008, Cherie Easterling filed a lawsuit challenging the impact of the PFT on women, on behalf of herself and similarly situated female applicants for CO positions. Davis was a class member in that lawsuit.

The Easterling complaint alleged that:

During the class-liability period, the D.O.C. utilized a four-part physical fitness test that included a sit and reach

test, a one-minute sit-up test, a one-minute push up test, and a timed 1.5-mile run test. In order to pass the [PFT], the D.O.C. required applicants to meet a minimum sex-by-age standard, whereby an applicant's pass/fail status was assessed according to the applicant's sex and age. On average, female applicants for the C.O. position failed the [PFT] at a rate that was higher than their male counterparts. This observed disparity in pass/fail rates by gender is statistically significant both in the aggregate <u>and for each test</u> administered by the D.O.C.

<u>Easterling v. Dep't of Correction</u>, 3:08–cv–826–JCH, Class Action Compl., Doc. No. 1, at ¶ 3 (emphasis added). The class that was certified in <u>Easterling</u> consisted of "[a]ll female applicants for the position of Correction Officer ("CO") at the State of Connecticut Department of Correction ("DOC") who participated in the CO selection process and failed the 1.5 mile run portion of the physical fitness test at any time from June 28, 2004 and continuing to the date of final judgment in this matter." <u>Easterling</u>, 3:08–cv–826–JCH, Ruling re: Pl.'s Mot. for Class Certification, Doc. No. 75, at 6.

In 2007, the DOC modified the PFT by substituting a 300-meter run for the 1.5 mile run. The court in <u>Easterling</u> stated that the "new 300–meter run test does not create an adverse impact on female applicants for the CO position." <u>Easterling v. Connecticut, Dep't of Correction</u>, No. 3:08–CV–0826 JCH, 2009 WL 324160, at *3 (D.Conn. Feb. 9, 2009). <u>See also</u> <u>Easterling</u>, 265 F.R.D. 45, 49 (D.Conn.2010), modified, 278 F.R.D. 41 (D.Conn.2011) ("No concerns have been raised about the potential for the 300–meter test to have a disparate impact on female applicants."). In all other respects, the PFT remained the same.

On May 5, 2011, the court in <u>Easterling</u> granted the plaintiff's motion for summary judgment, holding that the plaintiff had made out a <u>prima facie</u> case of disparate impact and that the DOC had not met its burden of establishing a business necessity for its sex-by-age standards for female applicants regarding the 1.5 mile run. <u>See</u> <u>Easterling</u>, 783 F.Supp.2d 323 (D.Conn. 2011).

In March 2012, the parties in <u>Easterling</u> signed a Joint Stipulation which stated that class members would receive priority hiring status in the 2012 CO selection process "subject to successful completion of a physical fitness exam." <u>Easterling</u>, 3:08–cv–826–JCH, Joint Stipulation, Doc. No. 187 at 4. It was understood that the 2012 PFT would be identical to the 2006 PFT as to three of the four parts of the test.

In 2012, Davis participated in the CO selection process. She took and passed the written examination. She then proceeded to the PFT in June 2012, which consisted of 1) a sit and reach test, 2) a one-minute sit-up test, 3) a one-minute push up test, and 4) a timed 300 meter run test. As in the earlier administrations of the PFT, the test results were evaluated using a sex-by-age standard. If the candidate failed any of the four parts, she failed the entire test. On average, female applicants for the CO position failed the PFT at a rate higher than that for male applicants. The observed disparity in pass/fail rates by gender for the 2012 PFT was statistically significant both in the aggregate and for three of the four individual tests. Davis began the PFT on June 19, 2012, at which time she failed the sit-up test, and she was notified of her failure the same day.

On April 15, 2013, Davis dual-filed an administrative charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC")

on behalf of herself and similarly situated women against the DOC.

The parties in Easterling reached a final settlement in September 2013. The settlement agreement provided that "this Agreement shall be a complete defense as to [DOC] and its officials, employees and agents to any claim, suit or action in any forum by Plaintiff Cherie Easterling, and all class members who do not opt-out, with regard to any claim raised, or that could have been raised in this litigation." (Stipulated Agreement, Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp."), Ex. A, Doc. No. 43-1, at ¶ 21.) See also id. at ¶ 46 (stating that plaintiffs agreed to release DOC "from any and all claims, demands, obligations, actions, causes of action, lawsuits, administrative proceedings, rights, damages, costs, loss of services, expenses and compensation of any nature whatsoever, whether based on tort, contract or other theory of recovery, that were brought or could have been brought in this lawsuit during the class period . . . .").

In 2014, Davis again applied for a CO position. Beginning with the 2014 test administrations and continuing to the present, the CO application process has not included a PFT component. Davis failed the interview in 2014 and was not hired as a CO.

Davis's complaint alleges that the defendants' 2012 administration of the PFT violated Title VII under both the disparate impact theory and the pattern-and-practice disparate treatment theory. Davis alleges that the 2012 PFT "although revised in form [in that the 300 meter run replaced the 1.5 mile run], remains discriminatory in substance because it continues to have an adverse impact on women, as witnessed by the observed disparity in pass/fail rates by gender." (Compl., Doc. No. 1, at ¶ 5.) The complaint sets forth class action allegations on behalf of "all female applicants who participated in the C.O. selection process and failed the physical fitness test at any time from June 2012 and continuing to the present." (Id. at ¶ 12.)

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted).

However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be

offered in support thereof.'" Mytych v. May Dep't Stores Co., 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

### A. Standing

The defendants contend that parts of Davis's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. They assert (a) that Davis lacks standing to seek declaratory or injunctive relief because she faces no "real or immediate threat of harm," and (b) that she lacks standing to challenge any portion of the PFT other than the sit-up portion, because that is the only part of the test that she failed. (See Defs.' Mem. in Supp. Of Mot. to Dismiss ("Defs.' Mem."), Doc. No. 31-1, at 10, 15.)

 Under Article III of the Constitution, federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The "irreducible constitutional minimum of standing" contains three elements:

First the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is a) concrete and particularized, and b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560–61, 112 S.Ct. 2130 (internal citations and quotation marks omitted). Where a plaintiff does not satisfy the three elements of standing, the court lacks subject matter jurisdiction over the suit.

### 1. Declaratory and Injunctive Relief

The defendants argue that Davis cannot satisfy the third element of standing, because DOC has now eliminated the PFT from its CO selection process, and so it is "merely speculative" that Davis's claimed injury would be redressed by a favorable decision.

 In order to obtain injunctive relief, the burden is on Davis to establish that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citations and internal quotation marks omitted). To meet this burden, Davis

'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [she] ... will be injured in the future.' Deshawn E. by Charlotte

E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998); see also O'Shea v. Littleton, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects"). Finally, abstract injury is not enough; rather, "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" O'Shea, 414 U.S. at 494, 94 S.Ct. 669; Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Shain v. Ellison, 356 F.3d 211, 215 (2d Cir.2004).

In Shain, the court held that "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Id. at 216 (emphasis in original). Davis has not demonstrated either.

■ As to the likelihood of future harm, Davis's claim is belied by the fact that she applied for and failed to qualify for a CO position in 2014, when the PFT was not in use. Thus, it is not apparent how Davis's alleged injury would be redressed by a decision in her favor.

■ A plaintiff has standing if her "injury was at that moment capable of being redressed through injunctive relief." Cty. of Riverside v. McLaughlin, 500 U.S. 44, 51, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In contrast, when "the constitutionally objectionable practice ceased altogether before the plaintiff filed [her] complaint," the plaintiff lacks standing. Id. Here, it is undisputed that the defendants ceased use of the PFT before Davis filed this suit. The situation here is similar to that in Clarry v. United States, 85 F.3d 1041, 1049 (2d Cir. 1996) ("[T]he policy challenged by the plaintiffs was repealed ... before the plaintiffs filed the amended complaint. Therefore, neither a declaratory judgment that the repealed policy is unconstitutional nor an injunction prohibiting the [defendant] from enforcing the policy would benefit the plaintiffs in any way."). The court in Clarry concluded that "[b]ecause a favorable ruling by the district court would not redress their alleged injury, the plaintiffs do not have standing to pursue this claim." Id.

Likewise a ruling in favor of Davis here would not redress her alleged injury. Thus, the motion to dismiss is being granted with respect to the claims for injunctive and declaratory relief.

### 2. Parts of PFT Other Than the Sit-Up Test

■ Davis seeks to challenge all four parts of the 2012 PFT: the sit and reach test, the one-minute sit-up test, the one-minute push up test, and the 300 meter run. The defendants contend that Davis cannot pursue a claim regarding the parts of the PFT other than the one she herself failed.

■ There is a two-part test for class standing:

[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

Ret. Bd. of Policemen's Annuity v. Bank of New York, 775 F.3d 154, 160 (2d Cir.2014) (emphasis added).

■ "As a general matter, to establish standing to challenge an allegedly un-

constitutional policy, a plaintiff must submit to the challenged policy." Jackson–Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir.1997). "[A] plaintiff must demonstrate standing for each claim [she] seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Thus, "with respect to each asserted claim, a plaintiff must always have suffered a distinct and palpable injury to herself.". Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir.2012) (internal citation and quotation marks omitted) (emphasis in original). In Blum v. Yaretsky, the Supreme Court held that:

> It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphasis in original). Here, Davis seeks to bring a class action on behalf of plaintiffs who were allegedly injured by not only DOC's use of the sit-up test, which she failed, but also by its use of the three other parts of the 2012 PFT. The fact that she and the purported class members were injured by "similar" conduct does not suffice to give Davis standing, when the conduct complained of was not the same.

> The actual-injury requirement would hardly serve [its] purpose ... if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration. The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."

Lewis v. Casey, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasis in original). "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Nunez v. Cuomo, No. 11–CV–3457 DLI LB, 2012 WL 3241260, at *11 (E.D.N.Y. Aug. 7, 2012) (quoting Lewis, 518 U.S. at 357, 116 S.Ct. 2174). See also DiMuro v. Clinique Labs., LLC, 572 Fed.Appx. 27, 29 (2d Cir.2014) (where plaintiffs sought to challenge defendant's marketing of seven different products, the plaintiffs "lack[ed] class standing to bring claims for the four products that they did not purchase").

Davis cannot demonstrate that she was harmed by the administration of the sit and reach test, the push up test, and/or the 300 meter run. Thus, she has no standing to bring suit with respect to those portions of the PFT, and the defendants' motion to dismiss is being granted as to those claims.

### B. Res Judicata

The defendants also argue that Davis's claims are barred by res judicata. The court agrees.

> Under ... federal law, the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of. an action precludes the parties ... from relitigating issues that were or could have been raised in that action. If a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected

transactions, out of which the action arose.

Duane Reade, Inc. v. Saint Paul Fire & Marine Ins. Co., 600 F.3d 190, 195–96 (2d Cir.2010) (citations and quotation marks omitted). In order to prove the affirmative defense of res judicata, the defendants must show: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir.2000).

 As to the first element, "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir.2002). See also Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992) (internal citations omitted) ("Settlements may also have preclusive effect. The preclusive effect of a settlement is measured by the intent of the parties to the settlement."); Duran v. Kiley, 586 Fed. Appx. 598, 599 (2d Cir.2013) (holding plaintiff's claim was barred by res judicata based on settlement in earlier litigation).

As to the second element, the parties agree that Davis was a member of the class of plaintiffs in the Easterling action and did not opt out.

 The parties disagree with respect to the third element, i.e. whether Davis's claims here could have been brought in the previous action. The defendants assert that "[t]he factual predicate upon which Davis bases her claims [is] substantially identical to the claims that were subject to the settlement agreement in Easterling." (Defs.' Mem. at 25.) The court agrees, because Davis's claims are based on conduct and procedures which were contem-

plated by, and implemented prior to, the final settlement in Easterling.

Both the Easterling complaint and the Davis complaint allege that the PFT "caused a disparate impact on the basis of sex … that was neither job related for the C.O. position, nor consistent with business necessity." (Easterling Compl. at ¶ 32, Davis Compl. at ¶¶ 33, 37.) The Easterling complaint alleged with respect to the PFT then in effect that the observed disparity was statistically significant "both in the aggregate and for each test administered by the DOC." (Easterling Compl. at ¶ 3.)

The sit-up portion of the PFT that Davis seeks to challenge here was part of the PFT during the Easterling litigation. The PFT included the sit-up test both in 2007, when Davis contends the Easterling class period ended, and in 2011, when the defendants contend the class period ended. The plaintiffs in Easterling did not seek class certification with respect to any portion of the PFT other than the 1.5 mile run. In 2007, DOC replaced the 1.5 mile run portion of the PFT with a 300 meter run. In February of 2009, the court in Easterling found that the 300 meter run did "not create an adverse impact on female applicants for the CO position." Easterling, No. 3:08–CV–0826 JCH, 2009 WL 324160, at *3 (D.Conn. Feb. 9, 2009).

In March 2012, the parties in Easterling signed a Joint Stipulation regarding the 2012 CO selection process, which acknowledged that class members would receive priority hiring status "subject to successful completion of a physical fitness exam." Easterling, 3:08–cv–826–JCH, Joint Stipulation, Doc. No. 187 at 4. Thus, at that the time the parties in Easterling signed the Joint Stipulation, they knew that the 2012 hiring process would include a PFT, and that the 2012 PFT would be identical to the 2006 PFT as to three of the four parts of the test (sit and reach test, sit-up test,

and push up test). Also, the parties in Easterling viewed it as appropriate to require a class member to pass the PFT, including the sit-up test, in order to receive the relief afforded by the Joint Stipulation, notwithstanding the fact that the plaintiffs in Easterling had originally alleged that there was a disparate impact with respect to each part of the PFT.

Under the terms of the Stipulated Agreement, it "shall be a complete defense ... with regard to any claim raised, or that could have been raised in [the Easterling] litigation." (Stipulated Agreement, Pl.'s Opp., Ex. A, Doc. No. 43-1, at ¶ 21.) Claims based on parts of the PFT other than the 1.5 mile test could have been raised in the Easterling lawsuit, given that those parts of the test were in effect and that the Easterling plaintiffs had data regarding the pass/fail rates of male and female applicants. See Easterling Compl. at ¶ 3 ("Th[e] observed disparity in pass/fail rates by gender is statistically significant both in the aggregate and for each test administered by D.O.C.").

Therefore, the court concludes that, to the extent the sit-up portion of the PFT was not raised in the Easterling case and in fact covered by the Stipulated Agreement, any claim based on the sit-up portion of the PFT could have been raised in Easterling. Davis, like any other class member in Easterling, had the opportunity to opt out of the class if she had she wanted to reserve her right to challenge other aspects of the PFT. She did not do so.

Thus, the defendants have met their burden of establishing the affirmative defense of res judicata, and the motion to dismiss is being granted.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 31) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.