**Charles MARCELINE and Kimberly Marceline, Plaintiffs,**

v.

**TOWN OF DARIEN, Officer Thomas J. Moore and Chief Duane J. Lovello, Defendants.**

**No. 3:12CV777(AWT).**

United States District Court, D. Connecticut.

Sept. 30, 2013.

decision to discharge the employee, the *McDonnell Douglas* presumption 'drops out of the picture.' ").

Louis J. Bonsangue, Philip D. Russell, Philip Russell, LLC, Greenwich, CT, for Plaintiffs.

Catherine S. Nietzel, John Wade Cannavino, Jr., Jonathan Zellner, Ryan Ryan Deluca, LLP, Stamford, CT, for Defendants.

1. The complaint asserts violations of the plaintiff's Fourth and Fifth Amendment rights, but fails to specify how these rights were violated. The defendants move to dismiss any Fourth and Fifth Amendment claims and the plaintiffs present no arguments in opposition. Therefore, to the extent the plaintiffs were seeking to assert any Fourth or Fifth Amendment claim, they are deemed

## RULING ON DEFENDANTS' MOTION TO DISMISS

ALVIN W. THOMPSON, District Judge.

The plaintiffs, Charles Marceline and Kimberly Marceline, have brought this action against the Town of Darien (the "Town"), Officer Thomas J. Moore ("Officer Moore") and Chief Duane J. Lovello ("Chief Lovello") for third-party spoliation, fraudulent and negligent misrepresentation, indemnification, violations of the Connecticut Retention Records Schedule, and violations of the First, Fourth, Fifth [1] and Fourteenth Amendments to the U.S. Constitution. The defendants have moved to dismiss the claims against them pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is being granted.

## I. FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." *Monsky v. Moraghan,* 127 F.3d 243, 244 (2d Cir.1997).

### A. The May 16, 2009 Incident

On May 16, 2009, Charles Marceline was traveling with his teenage daughter Kimberly on Interstate 95 in Connecticut when he noticed that a black sedan, which was using its horn and flashing its lights, was following his car. Ms. Marceline contacted Emergency 911 and stayed on her cell

abandoned. *See, e.g., Massaro v. Allingtown Fire Dist.,* No. 3:03CV136 (EBB), 2006 WL 1668008 at *5 (D.Conn. June 16, 2006); *Hanig v. Yorktown Central Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005); *Omar S. v. Connecticut Dept. of Children and Families,* No. 3:02CV429 (RNC), 2003 WL 1740672 at *2 n. 5 (D.Conn. Mar. 24, 2003).

phone during the incident. Eventually, the 911 dispatcher advised the plaintiffs to exit the highway. Mr. Marceline exited the highway at Exit 12 and stopped his car in front of a firehouse near the highway exit ramp in the Town.

Mr. Marceline got out of the car and began walking toward the firehouse. Ms. Marceline also got out of the car, while still on the cell phone with the 911 dispatcher. The black sedan pulled up near them. A woman got out of the black sedan and pointed a semi-automatic pistol at Ms. Marceline's head. The woman, subsequently identified as off-duty Stamford Police Officer Miriam Delgado ("Delgado"), instructed Ms. Marceline to put the cell phone on the ground.

Six Darien police officers responded to the 911 call at approximately 7:36 a.m. and 7:54 a.m. Each police officer arrived in his or her own vehicle. Each vehicle was equipped with a laptop-style computer, and each computer was linked to the mobile server and to each of the other police vehicle computers.

Some of the Darien police officers remained on the scene, with their vehicles running and their computer laptops in use, for more than one hour. While speaking to Mr. Marceline, one of the police officers detected the odor of marijuana. Mr. Marceline was arrested after admitting to police that he had smoked marijuana earlier that day. The plaintiffs were transported to the Connecticut State Police barracks. Mr. Marceline was charged with reckless driving, possession of drug paraphernalia and possession of less than four ounces of marijuana. Ms. Marceline was not charged with any offense or violation. Mr. Marceline posted bail.

In Mr. Marceline's criminal case, on May 28, 2009, the Connecticut Superior Court directed that all records and data pertaining to the incident be preserved.

Specifically, the order directs the preservation of

> all documents, including all tapes, transcription or other recording of all telephone calls to the police department or law enforcement entity from *any party or witness reporting this incident*, including all 911 and E911 calls ... all dispatch tapes, all records of broadcasts concerning this incident by any law enforcement agency involved, all handwritten, typewritten or any other notes ... including cell phone calls to and from officers in the field and phone bills reflecting such information, and any and all other records, reports, statements, videotapes and photographs pertaining to this case. . . .

Doc. No. 28, Ex. A. (emphasis in original); Compl. ¶ 24. On June 8, 2009, Mr. Marceline served a copy of the court's order on the Selectman's Office and the Town Clerk's Office.

On May 29, 2009, the plaintiffs, through their counsel, sent a letter to Lieutenant Thomas Heinseen of the Connecticut State Police Troop G in Bridgeport and Chief Lovello, notifying them of their forthcoming civil action against the Town of Darien Police Department and its employees, based on the incident.

The charges against Mr. Marceline were *nolled.*

### B. 2009 Federal Action

On October 7, 2009, the plaintiffs brought a § 1983 action against Delgado in this district for civil rights violations. *See Marceline v. Delgado,* No. 3:09–CV–1591(VLB) (D.Conn.). The plaintiffs sent notice of the civil case to the defendants.

On or about May 12, 2010, Delgado was a police officer with the Stamford Police Department. She provided documents, including police reports, as well as a tran-

script and CD of the 911 calls. The plaintiffs allege that "absent from the production was any police-to-police communications, CAD [computer aided dispatch] reports, data from the police cars' mobile data terminal which is stored on the Town of Darien's mobile server...." Compl. ¶ 29. In March 2011, the Town produced a police report, an email and a list of police officers and their telephone numbers by fax as well as hardcopies of the previously produced documents and a CD containing the 911 calls.

On June 23, 2011, the court ruled on the defendant's motion for summary judgment. The court granted the motion as to nine out of the twelve claims but permitted the excessive force and the intentional infliction of emotional distress claims to proceed to trial. The court granted the motion with respect to the false arrest, false imprisonment and malicious prosecution claims because the defendant had probable cause to make the traffic stop; with respect to the substantive due process and Eighth Amendment claims because they were duplicative of the Fourth Amendment excessive force claims; with respect to the equal protection claim because no protected class was involved; and with respect to the tortious inference with a 911 call claim because it is not a private cause of action under Connecticut law.

On September 16, 2011, the Town, through its legal counsel, produced additional responsive documents, including a CD of 911 calls and radio traffic, a detailed call log from CAD, a computerized incident report and a detailed timesheet concerning personnel who worked on May 16, 2009. Moreover, on September 28, 2011, Officer Moore, the records officer and court liaison and information systems manager for the Darien Police Department represented to the plaintiffs' counsel, after "a motor vehicle hearing in an unrelated matter,"

that all the plaintiffs needed to do to obtain the data from the police vehicles' mobile computer and GPS was to file a request. *Id.* at ¶ 41.

Trial was scheduled for October 2011, but at the request of the plaintiffs, the trial was continued so that the plaintiffs could conduct additional discovery.

On October 12, 2011, the plaintiffs deposed Officer Moore. Officer Moore testified that in 2009, when he was asked by Chief Lovello to retrieve information related to the incident on May 16, 2009, he had never seen and did not know that there was a court order regarding the preservation of evidence. He also stated that he never looked at the GPS records from the mobile server to find out if there were any responsive documents. Officer Moore agreed to attempt to retrieve the data outlined in the preservation order.

On October 19, 2011, the plaintiffs deposed Officer Moore again. At the second deposition, he produced 12 variations of the CAD report from May 16, 2009 but testified that the data from the laptops stored on the mobile server and the GPS data were not available. Officer Moore testified that it was the department's policy to save data for 90 days and that he had physically destroyed the file related to the May 16, 2009 incident in accordance with the department's policy.

On February 16, 2012, the court granted in part Delgado's motion in limine to preclude the plaintiffs from offering testimony of Chief Lovello, Officer Moore, Sergeant Johnson, former employee LaBella and the representatives of the Darien and Connecticut State Police Departments and from offering evidence about the preservation orders. Among other reasons, the court explained that the plaintiffs had not "demonstrated how the issues of what documents were retained and produced or what document retention policies and prac-

tices were in place at the Darien or the Connecticut State Police Departments are relevant to demonstrating that Defendant Delgado, a Stamford Police Department Officer, employed excessive force and engaged in an intentional infliction of emotional distress." *Marceline v. Delgado*, Doc. No. 113 at *5.

On March 22, 2012, the parties filed a stipulation of dismissal with prejudice.

## C. The Instant Matter

The plaintiffs commenced this action in Connecticut Superior Court. The defendants removed this action to federal court and then filed their motion to dismiss.

The plaintiffs allege sixteen causes of action: 1) intentional spoliation of evidence against the Town, 2) intentional spoliation of evidence against Officer Moore, 3) intentional spoliation of evidence against Chief Lovello, 4) fraudulent concealment pursuant to Conn.Gen.Stat. § 52–595 against all defendants, 5) negligent spoliation of evidence against the Town, 6) negligent spoliation of evidence against Officer Moore, 7) negligent spoliation of evidence against Chief Lovello, 8) indemnification pursuant to Conn.Gen.Stat. § 7–465 against the Town, 9) violation of the State Agencies' Records Retention/Disposition Schedule S10, Series # S10–100, against the Town, 10) violation of the State Agencies' Records Retention/Disposition Schedule S10, Series # S10–480, against the Town, 11) violation of the State Agencies' Records Retention/Disposition Schedule S1, Series # S1–470, against the Town, 12) violation of Conn.Gen.Stat. § 7–109 against the Town, 13) violation of the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution against all defendants, 14) deprivation of rights under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution against Officer Moore and Chief Lovello in their individual capac-

ities, 15) fraudulent misrepresentation against all defendants, and 16) negligent misrepresentation against all defendants.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). When considering a Rule 12(c) motion for judgment on the pleadings, the court uses the same standard as used to address a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir.2011). When deciding a motion for judgment under Rule 12(c) or a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic reci-

tation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

### A. Res *Judicata;* Spoliation Claims

■ The defendants argue that the plaintiffs' spoliation claims are barred by the doctrine of *res judicata.*

"Under . . . federal law, the doctrine of *res judicata,* or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" If a valid and final judgment has been entered on the merits of a case, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

*Duane Reade, Inc. v. Saint Paul Fire & Marine Ins. Co.,* 600 F.3d 190, 195–96 (2d Cir.2010) (citations omitted) (alterations in original). "The defense of *res judicata* may be raised on a Rule 12(b)(6) motion to dismiss if 'all relevant facts are shown by the court's own records,'" of which the court can take judicial notice. *Chien v. Skystar Bio Pharm. Co.,* 623 F.Supp.2d 255, 260 n. 3 (D.Conn.2009) (quoting *AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir.2003)).

■ To prove the affirmative defense of *res judicata,* a party must show: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000). The Second Circuit has also formulated the test in a slightly different form. *See Esquire Trade & Finance, Inc. v. CBQ, Inc.,* 562 F.3d 516, 520

(2d Cir.2009) (citation omitted) ("The doctrine of *res judicata* 'bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.' ").

The court takes judicial notice of the rulings of the district court in *Marceline v. Delgado,* No. 3:09–CV–1591 (VLB). In the 2009 Federal Action, the court addressed the spoliation issue on several occasions. In a motion in limine, the court excluded all testimony and evidence regarding the preservation order and the production and retention of documents by Darien and the Connecticut State Police Departments. The court found that "[b]ased on the factual and legal arguments made by the Plaintiffs repeatedly, the Court has already ruled that the preservation orders are of 'questionable relevance' and that Plaintiffs['] 'assertion of spoliation is unsupported by the record and its absence of probative value is outweighed by its prejudice.' " *Marceline v. Delgado,* Doc. No. 113 at *2. The court also found that "Plaintiffs' counsel has not shown that the potential non-compliance by a non-party with a Superior Court Preservation Order in a case disposed of in 2009 is relevant to this action." *Id.* In addition, the court stated that the "Plaintiffs have failed to demonstrate such material ever existed, that the preservation order was in effect and imposed a duty to possess such material in 2011 when Plaintiffs sought it. . . ." *Id.* at *4.

 Moreover, it is well-established in the Second Circuit that "[a] dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Nemaizer v. Baker,* 793 F.2d 58, 60 (2d Cir.1986); *see also NBN Broadcasting,*

*Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72, 78 (2d Cir.1997) ("Under applicable law, a discontinuance with prejudice is deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted in the suit."); *Israel v. Carpenter,* 120 F.3d 361, 365 (2d Cir.1997); *Samuels v. Northern Telecom, Inc.,* 942 F.2d 834, 836 (2d Cir.1991) ("A stipulation dismissing an action with prejudice can have the preclusive effect of *res judicata.*"). Furthermore, "[a] dismissal with prejudice arising out of an agreement of the parties is an adjudication of all matters contemplated in the agreement, and a court order which memorializes this agreement bars further proceedings." *Nemaizer,* 793 F.2d at 61. This is true even if one party "intended to preserve his right" to bring a subsequent claim, or when the stipulation is entered into only as a result of "the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload." *Id.* at 62. Indeed, the Second Circuit has noted that its "cases reflect a consistent reluctance to limit the effect of such a stipulation by looking behind its plain language," *Israel,* 120 F.3d at 365, and that "[r]es judicata may not be avoided on the basis of . . . an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice." *Samuels,* 942 F.2d at 837.

 Here, the parties entered into a stipulation of "dismissal of the [2009 Federal Action] with prejudice." *Marceline v. Delgado,* Doc. No. 115. This stipulation precludes the plaintiffs from relitigating all issues raised in that action, or any issues that could have been brought, including the claims regarding spoliation and destruction of evidence.

Therefore, the plaintiffs' spoliation claims in the instant action are barred by the doctrine of *res judicata.*

## B. Equal Protection Claims

█ The plaintiffs allege that they were deprived of equal protection of the law because: (i) defendants Lovello and Moore intentionally and with animus destroyed evidence in order to protect a fellow officer serving with another police department (i.e., Delgado); and (ii) the Town, through its police department, failed to enforce the laws equally and fairly and to protect the plaintiffs' personal safety. Both of these claims sound in "a violation of the Equal Protection Clause based on selective enforcement." *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234 (2d Cir.2004). In order to establish an Equal Protection claim based on a selective enforcement theory,

a plaintiff must ordinarily show the following:

(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Id.* (quoting *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999) (alterations in original)).

With respect to each part of their Equal Protection claim, the plaintiffs fail to plead facts sufficient to establish that they could satisfy the first element of this standard by showing that they were selectively treated compared to similarly situated others. With respect to the intentional destruction of evidence in violation of a court order, litigation of that issue is barred by the doctrine of *res judicata.* As discussed above, it was determined in *Marceline v.*

*Delgado* that such claims lacked evidentiary support and that the plaintiffs failed to demonstrate that the claimed evidence ever existed or was improperly destroyed. Consequently, the plaintiffs cannot show how they were selectively treated, compared to others who were similarly situated, with respect to defendants Lovello and Moore.

Similarly, the plaintiffs cannot establish that they were treated selectively by the Town through its "failure to enforce the laws equally and fairly and to protect the personal safety of the Plaintiffs." Pl.'s Mem. Opp'n Mot. Dismiss 15. The only argument the plaintiffs offer to support this claim, which was first articulated in their memorandum in opposition to the motion to dismiss, is a citation to *Thurman v. City of Torrington,* 595 F.Supp. 1521, 1527–1528 (D.Conn.1984). However, *Thurman* is inapposite. In *Thurman,* the plaintiffs—a woman and her son who had been threatened with assault by her estranged husband in violation of Connecticut law—claimed that the defendants used an administrative classification (i.e., women in domestic relationships v. women not in domestic relationships) to implement the law in a discriminatory fashion. *See id.* at 1527. The plaintiffs also alleged that over the course of eight months the police failed to provide protection against the assaults and to arrest the known perpetrator, despite the police department's knowledge of the threats and the estranged husband's statements to police officers that he intended to kill his wife. *See id.* at 1526–27.

█ In the instant case, in contrast to *Thurman,* there is no allegation of ongoing threats by an individual or individuals that endangered the plaintiffs' personal safety and necessitated police protection. There are also no allegations as to a pattern of mistreatment by the police against the

plaintiffs. Further, there is no evidence that the plaintiffs were treated differently based on an arbitrary classification, or indeed any classification. Rather, the plaintiffs only claim that the police department failed to question or arrest Delgado after the May 16, 2009 incident. Such police "inaction," even if accepted as true, does not rise to the level necessary to constitute a violation of the plaintiffs' right to equal protection of the law based on selective enforcement. As the plaintiffs have alleged no other facts to support their claim of unequal application of the law at the hands of the Town's police force, this aspect of their Equal Protection claim cannot survive the motion to dismiss.

Therefore, all Equal Protection claims contained in the plaintiffs' complaint are being dismissed as to all defendants.

## C. Substantive Due Process Claims

The plaintiffs claim that Chief Lovello, Officer Moore, and the Town violated their right to substantive due process under the Fourteenth Amendment of the U.S. Constitution by: (i) interrogating and arresting Mr. Marceline; (ii) "intentionally" destroying evidence in contravention of a court order; and (iii) failing to arrest Delgado after the May 16, 2009 incident.

The Supreme Court has stated on more than one occasion that " '[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' " *Albright v. Oliver*, 510 U.S. 266, 271–72, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). As a result of this reluctance, courts have been instructed that "[w]here a particular Amendment 'provides an explicit textual source of con-

stitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Albright*, 510 U.S. at 273, 114 S.Ct. 807 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Applying the *Albright* standard to the instant case, the court determines that for two of the plaintiffs' three claims, "substantive due process, with its 'scare and open-ended' 'guideposts,' can afford [them] no relief." *Albright*, 510 U.S. at 275, 114 S.Ct. 807 (internal citations omitted). First, the claim involving intentional destruction of evidence by the Town's police force is more appropriately brought, and was brought, under a theory of violation of the plaintiff's right to equal protection under the law. The Constitution provides a specific textual source to protect citizens from this type of behavior, so substantive due process is not the appropriate vehicle for litigating such a claim.

█ Second, the plaintiffs' claim that their rights were violated when "police officers interrogated and arrested ... Charles Marceline" similarly cannot be brought as a substantive due process claim. Pl.'s Mem. Opp'n Mot. Dismiss 12. Like the plaintiff in *Albright*, the plaintiffs here appear to be arguing that "the action of [the defendants] infringed [Mr. Marceline's] substantive due process right to be free from prosecution [and arrest] without probable cause." *Albright*, 510 U.S. at 271, 114 S.Ct. 807. However, just as the court in *Albright* found, "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274, 114 S.Ct. 807. Therefore, any claim pertaining to Mr. Marceline's arrest should be brought pursuant to the Fourth Amendment, and substantive due process is the

incorrect theory under which to analyze such claims.

The plaintiffs' final substantive due process claim, on the other hand, does appear to be appropriately brought. The court is unaware of any specific constitutional text regarding the right of a citizen to have another citizen arrested, or an obligation of the government to arrest a citizen when it is requested. However, it is for this very reason that the plaintiffs' claim that their substantive due process rights were violated by the Town's failure to arrest Delgado ultimately fails.

▮▮ "Substantive due process protects individuals against government action that is arbitrary, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations and quotation marks omitted). "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy,* 401 F.3d 75, 93 (2d Cir.2005) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). "[T]he measure of what is conscience-shocking is no calibrated yard stick.... [M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged School Dist.,* 239 F.3d 246, 252 (2d Cir.2001) (internal citation omitted). However, substantive due process does not protect against government action that is merely "incorrect or ill-advised." *Lowrance,* 20 F.3d at 537 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

▮▮ Even accepting as true all facts pled by the plaintiffs, the officers' conduct with respect to Delgado falls far short of the "shocks-the-conscience" standard necessary to survive a motion to dismiss. As noted above, the plaintiffs have no constitutional right to compel the police to arrest their alleged harasser, and the government is under no constitutional obligation to do so merely because the plaintiffs believe it should. The plaintiffs have not pled facts sufficient to show that any defendant acted so egregiously or abused his or its power so maliciously as to rise to the level of a violation of their substantive due process rights.

Therefore, all substantive due process claims contained in the plaintiffs' complaint are being dismissed as to all defendants.

**D. First Amendment Claims**

"It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky,* 127 F.3d at 246 (citing *Morello v. James,* 810 F.2d 344, 346 (2d Cir.1987); *Simmons v. Dickhaut,* 804 F.2d 182, 183 (1st Cir.1986) (collecting cases)).

Access to the courts claims are typically categorized into two groups. The first consists of "forward-looking" access cases where some "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury,* 536 U.S. 403, 413, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). In those cases, "the relief sought may be a law library for a prisoner's use in preparing a case, or a reader for an illiterate prisoner, or simply a lawyer .... [or]

challenging filing fees that poor plaintiffs cannot afford to pay...." *See id.* (internal citations omitted). "The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413–14, 122 S.Ct. 2179.

"The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, *e.g., Foster v. Lake Jackson,* 28 F.3d 425, 429 (C.A.5 1994); *Bell v. Milwaukee,* 746 F.2d 1205, 1261 (C.A.7 1984) ('[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress'), the loss of an opportunity to sue, *e.g., Swekel v. River Rouge,* 119 F.3d 1259, 1261 (C.A.6 1997) (police cover-up extended throughout 'time to file suit ... under ... statute of limitations'), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here."

*Id.* at 414, 122 S.Ct. 2179. "These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

▇ "As the Supreme Court has explained, the requirement of actual injury 'derives ultimately from the doctrine of standing.' [*Lewis v. Casey,* 518 U.S. 343] *Id.* at [349], 116 S.Ct. [2174] at 2179 [135 L.Ed.2d 606 (1996)]." *Monsky,* 127 F.3d at 246. Thus, "to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' *id.* at [349], 116 S.Ct. at 2179, *i.e.,* took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim,' *id.* at [351], 116 S.Ct. at 2180." *Id.*

▇ In their opposition brief, for the first time, the plaintiffs state that their First Amendment claim refers to their right to access the courts. Specifically, the plaintiffs assert that the defendants severely hampered their ability to petition the court and prosecute their case. The plaintiffs argue that their rights were violated when the defendants intentionally destroyed evidence and that as a result of the alleged destruction, the plaintiffs were unable to establish a *prima facie* case for nine out of twelve counts in the 2009 Federal Action. This argument fails for two reasons. First, as is discussed above, litigation of this issue is barred by the doctrine of *res judicata,* so it cannot be raised in this case. Second, the court ruled in the 2009 Federal Action that such evidence was not dispositive of the claims in the 2009 Federal Action and excluded the testimony the plaintiffs sought to offer in that action related to such evidence. The primary basis for the exclusion of the testimony, as explained by the court, was that Mr. Marceline admitted that he was speeding, which established probable cause for the stop by Delgado. However, even with these rulings, the plaintiffs were able to access the courts, proceed on some of their claims and resolve the case via a stipulation of dismissal with prejudice. Thus, the plaintiffs have not alleged facts that could demonstrate that they were prevented from accessing the courts, even when their factual allegations are accepted as true.

Therefore, the motion to dismiss is being granted as to the plaintiffs' First Amendment claims.

### E. Monell Claims

"In [*Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),] the [United States] Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir.2007). "A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior.... In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) (citation omitted). However, "neither [*Monell*] nor any other of [the Supreme Court's] cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact ... the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

As discussed above, the court has found that the plaintiffs have failed to plead factual allegations that could show that they suffered any constitutional harm. Therefore, the *Monell* claims are being dismissed.

### F. State Law Claims

Having dismissed the plaintiffs' federal law claims, the court declines to exercise supplemental jurisdiction over their state-law claims in the interests of judicial economy, convenience, fairness, and comity. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." When federal claims are dismissed before trial, the basis for retaining jurisdiction is weak. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state—law claims.") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Here all of the factors to be considered point toward declining jurisdiction over the plaintiffs' claims for fraudulent and negligent misrepresentation, indemnification and violations of the Connecticut Records Retention Schedule.

### IV. CONCLUSION

Accordingly, for the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 14) is hereby GRANTED. The plaintiffs' federal claims are dismissed, and the court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims. The Clerk shall close this case.

It is so ordered.